## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DARCI ANN SANCHEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-21-356-GLJ** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Darci Ann Sanchez requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]"   *Id*. § 423 (d)(2)(A).   Social security regulations

implement a five-step sequential process to evaluate a disability claim.   *See* 20 C.F.R.

§§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied.   *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997).   Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v.

NLRB*, 305 U.S. 197, 229 (1938)).   *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996).   The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's.   *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

(10th Cir. 1991).   But the Court must review the record as a whole, and "[t]he substantiality

of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-six years old at the administrative hearing.  (Tr. 34, 226). She completed high school and two years of college, and has worked as a nurse aide, cashier supervisor, molding-machine tender, and pharmacy technician. (Tr. 26, 263).  She alleges she has been unable to work since an amended onset date of April 1, 2019, due to nerve pain in her back, a numb left foot, nerve damage, six back surgeries, spinal cord stimulator, inability to stand long periods of time, degenerative back disease, deteriorating back discs, seizures, brain bleeding, stroke, problems processing thoughts and communicating, weakness in the left hand and arm, and depression.  (Tr. 262).

### Procedural History

On May 1, 2019, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  Her applications were denied.  ALJ Doug Gabbard, II, held an administrative hearing and determined that the claimant was not disabled in a written decision dated March 1, 2021. (Tr. 15-28).  The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  In his written decision at step two, the ALJ found that the claimant had the severe impairments of

-3-

epilepsy, lumbar and thoracic spine degenerative disc disease, unspecified neurocognitive disorder, unspecified major depressive disorder with anxious distress, panic disorder without agoraphobia, and PTSD, as well as the nonsevere impairments of cervical spine degenerative disc disease, polysubstance dependence, traumatic brain injury, migraines, frequent urinary tract infections, essential hypertension, hypothyroidism, GERD, muscle spasms, hepatic steatosis, menorrhagia, four warts on the tip of her left second through third fingers, hypokalemia, acute cholecystitis, left foot numbness, and nicotine addiction. (Tr. 18).

Next, the ALJ concluded that the claimant did not meet a Listing, then determined that she had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), except that she was unlimited in climbing ramps/stairs and balancing, could only frequently kneel and crouch, could only occasionally stoop and crawl, could never climb ladders/ropes/scaffolds, and must avoid all exposure to hazards such as open flames, unprotected heights, and dangerous moving machinery. (Tr. 21). Additionally, he found that she was limited to unskilled work, which would be simple, repetitive, routine, and where only one or two-step tasks were required; she could learn new simple tasks when one-on-one explanations were provided; supervision must be simple, direct, tactful, and supportive; and interpersonal contact with supervisors and coworkers must be incidental to the work performed, such as assembly work. (Tr. 21). Finally, he found she would do best in a work setting with a consistent schedule and in a well-spaced work setting where she is around a small group of familiar coworkers, or where she could frequently work alone, that she must not be required to work

at fast-paced production line speeds, that she should have only occasional and forewarned workplace changes, and that she should have only incidental contact with the general public. (Tr. 21). The ALJ then determined that while this RFC prevented the claimant from returning to any of her past relevant work, she was nevertheless not disabled because there was other work that she could perform, *e.g.*, small products assembler I, subassembler, and housekeeping cleaner. (Tr. 26-27).

## Review

The claimant's sole contention of error on appeal is that the ALJ improperly determined there was work she could perform at step five by ignoring testimony from the vocational expert ("VE") at the administrative hearing. The Court agrees with the claimant's assertion, and the decision of the Commissioner must therefore be reversed.

The evidence relevant to this appeal centers on the opinion of the state reviewing physician upon reconsideration of an initial opinion by a state reviewing physician. In reviewing the record initially, Dr. Stephanie Crall, Ph.D. found that the claimant had the RFC to understand, remember, and perform simple tasks and relate to others on a superficial work basis, and that she could adapt to a work situation. (Tr. 87). On reconsideration, Dr. Gary Lindsey, Ph.D., found that the claimant was able to perform simple tasks of one to two steps in a familiar setting with direct and supportive supervision and learn new simple tasks when one-on-one oral explanations are provided, that she will work best in a setting with a consistent schedule, that she is able to interact appropriately with coworkers and supervisors for incidental work purposes and have only limited contact

with the public, and that she can adapt to a work setting and some forewarned changes in a usually stable work setting. (Tr. 124).

At the administrative hearing, the ALJ called on a VE to testify as to the claimant's past work, and as to what types of work she could perform moving forward. After the VE identified the claimant's past relevant work, the ALJ propounded a series of hypotheticals. The first hypothetical included some physical limitations, but also posited someone who was:

> limited to unskilled work, which is simple, repetitive, and routine. And where only one or two step tasks are required. She is able to learn new simple tasks when one on one explanations are provided. Her supervision must be simple, direct, tactful, and supportive. Interpersonal contact with supervisors and coworkers must be incidental to the work performed, such as assembly work. She will do best in a work setting with a consistent schedule, and in a work setting where she is around a small group of familiar coworkers, or where she could frequently work alone. And, and the work setting I'm talking about is a well-spaced work setting where she's around a small group of her coworkers[.] She would not be required to work at fast paced production line speeds. She should have only occasional forewarned workplace changes, and she should have only incidental contact with the general public.

(Tr. 59-60). In response to this hypothetical, the VE indicated that the claimant's past work would be excluded, but that such a person could perform the jobs of small products assembler I, sub assembler, and housekeeping cleaner. (Tr. 60-61). A second hypothetical included additional physical limitations, but no additional mental limitations, then a third hypothetical with a person who would need frequent unscheduled work absences, at least two per month, and would be off task at least 20% of each workday. (Tr. 61-63). The VE responded that there would be no jobs for a person with either of the limitations of the third

hypothetical.  (Tr. 63).  The VE further noted that her testimony was consistent with the

Dictionary of Occupational Titles ("DICOT").  (Tr. 63).

The claimant's representative then questioned the VE, asking her to:

[A]ssume that our hypothetical claimant is limited to simple tasks of one and two steps. And the, the hypothetical claimant works in a familiar setting with direct and supportive supervision. The hypothetical claimant is able to learn new simple tasks with one on one explanations.  The work would be best in a setting with a consistent schedule.  And the hypothetical claimant could interact appropriately with coworkers and supervisors on an incidental work basis.  The hypothetical claimant would be limited to contact, only – would have only limited contact with the public.  The claimant could adapt to a work setting with some forewarned changes in a usually stable work setting.

(Tr. 65).  The VE stated that the claimant's past work would not be available, and when

asked to identify other works, she responded,

The combination of the direct supportive with learning new simple tasks with one to one supervision, if that was continuous and ongoing, then that would be supportive employment.  I mean if the person is requiring additional supervision, or supervision in excess of what other people are performing, then that is going to be a supported work setting. As far as direct supportive, that can mean a couple of different things on its own. Most supervision is direct.  As far as supported supervision, that is probably rather subjective as far as in the economy.  I think most people try to hire good supervisors, but at the same time that can kind of, you know, different personalities can come across differently as far as whether something is assumed to be supportive in a competitive situation.  But in a noncompetitive situation, the way I would take supportive employment would be that it would be supportive employment, would be something afforded that's not available in a competitive setting, if that makes sense.

(Tr. 66).  She then clarified that she did not believe work would be available, as that would

be a supported situation with that combination of limitations.  (Tr. 66-67).

In his written decision at step four, the ALJ found, *inter alia*, Dr. Lindsey's mental

RFC assessment more persuasive than Dr. Crall's.  The ALJ found that the limitations

indicated by Dr. Lindsey were "better supported, but not entirely supported," finding a marked limitation in understanding and remembering detailed instructions to be poorly supported and inconsistent with the claimant's completion of two years of college and history of semi-skilled jobs. Somewhat confusingly, he then concluded that a limitation to unskilled work where only one or two-step tasks were required, and with the ability to learn new simple tasks when one-on-one explanations are provided, was supported by the record. (Tr. 25). He then likewise found that the claimant must have simple, direct, tactful, and supportive supervision, and will do best in a well-spaced work setting where she is around a small group of familiar coworkers or where she could frequently work alone. (Tr. 25). He further limited her to occasional incidental public contact, stated she must not be required to work at fast-paced production line speeds, and further found that she would do best in a work setting with a consistent schedule and could adapt to a work setting and some forewarned changes in a usually stable work setting. (Tr. 25-26). He then concluded that the claimant was able to perform the jobs identified at step five. (Tr. 27).

The claimant contends that the ALJ erred in finding there was work she could perform at step five. Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any

conflict between her testimony and the DOT, the claimant contends there is a conflict with regard to the jobs identified and the VE's testimony. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Here, the claimant contends that the ALJ's first hypothetical at the administrative hearing contained the same mental limitations as her representative's hypothetical at the hearing and that he selectively ignored the VE's testimony that all work was precluded. Because "[a]n administrative law judge may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers," *Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987), the claimant contends reversal is required here. The Commissioner asserts that the representative's hypothetical at the administrative hearing did not exactly match the RFC (as the ALJ's hypothetical did), and that the VE's testimony that all employment would be precluded was contingent upon additional conditions not part of the assessed RFC.

The differences between the two hypotheticals are minor. As relevant to this appeal, the ALJ posited a scenario with a claimant who "is able to learn <u>new simple tasks</u> when <u>one on one explanations</u> are provided. Her supervision must be simple, <u>direct,</u> tactful, <u>and</u> <u>supportive</u>. Interpersonal contact with supervisors and coworkers must be incidental to the work performed[.]" (Tr. 21). For this hypothetical, the VE identified three unskilled jobs the claimant could perform. (Tr. 60-61). The representative, similarly, posited a "hypothetical claimant [who] works in a familiar setting with <u>direct and supportive</u>

supervision. The hypothetical claimant is able to <u>learn new simple tasks</u> with <u>one on one explanations</u>. []And the hypothetical claimant could interact appropriately with coworkers and supervisors on an incidental work basis."  (Tr. 65).  But here, the VE stated that all work would be precluded with the "combination of the <u>direct supportive</u> with <u>learning new simple tasks</u> with <u>one to one supervision</u>, if that was continuous and ongoing, then that would be supportive employment." (Tr 66).  The ALJ ultimately found the claimant's RFC to include, *inter alia*, that she could learn <u>new simple tasks</u> when <u>one-on-one explanations</u> were provided; supervision must be simple, <u>direct,</u> tactful, and <u>supportive</u>; and interpersonal contact with supervisors and coworkers must be incidental to the work performed.  (Tr. 21).

The Court agrees that there was a conflict raised by the VE's testimony.  Although the VE attempted to distinguish the representative's hypothetical by saying that work under that hypothetical is presumed continuous and ongoing, there is nothing to say that the ALJ's hypothetical including direct and supportive supervision and only learning new simple tasks when one-on-one explanations were provided is not also a continuing and ongoing condition of her employment.  Here, while it is clear that the ALJ did not find the claimant needed "sheltered employment," *see Siedlik v. Berryhill*, 2017 WL 1208749, at *3 (E.D. Okla. Mar. 15, 2017) ("'Sheltered employment' has a very specific definition under the regulations. 'Sheltered employment is employment provided for handicapped individuals in a protected environment under an institutional program.' Nothing in Dr. McKee's opinion indicates that he intended this specific program when he referred to 'a supportive work environment.'") (*citing Titles II & XVI: Determining Whether Work Is Substantial*

-10-

*Gainful Activity-Employees*, Soc. Sec. R. 83-33 (S.S.A. 1983)), *report and recommendation adopted*, 2017 WL 1207561 (E.D. Okla. Mar. 31, 2017), the ALJ failed to properly clarify the parameters of her required direct and supportive supervision requiring one-on-one explanations, *see Hambrick v. Astrue*, 2011 WL 651408, at *6 (N.D. Okla. Feb. 11, 2011) ("Had the RFC included a requirement that Hambrick have a job coach or a supportive supervisor, this may well have barred competitive employment."). *See also Estes v. Astrue*, 2013 WL 1222062, at *3 (D. Colo. Mar. 25, 2013) ("When mental impairments are at issue, the Commissioner has specifically recognized that a claimant may still be markedly limited in this area, even if she has a wide range of activities of daily living, if she cannot perform such activities without direct supervision or 'on a consistent, useful, routine basis, or without undue interruptions or distractions.'") (*quoting* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00C(1) & § 12.00F ("Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychological factors such as placement in ... highly structured and supportive settings [such as] may . . . be found in your home.")).

Because the ALJ failed to properly address these inconsistencies, the Commissioner's decision is reversed and the case remanded to the ALJ for further analysis. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 4th day of November, 2022.

_____

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**